United States District Court
Southern District of Texas
**ENTERED**
August 31, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOHNNY  BRUCE, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:19-CV-288 |
| | § | |
| FLAGSTAR BANK, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Plaintiffs Johnny and Pamela Bruce filed this action against Defendant Flagstar Bank, complaining that Flagstar foreclosed the purchase money lien on their house after it was damaged by Hurricane Harvey and while they were still rebuilding with proceeds from their insurance policy.  They allege state law claims for breach of contract, wrongful foreclosure, and violations of the Texas Deceptive Trade Practices Act (DTPA), Tex. Bus. & Com. Code, § 17.45 et seq.  Before the Court is Flagstar's Motion for Summary Judgment, seeking judgment eliminating all claims against it.  D.E. 18.  Plaintiffs responded, Flagstar replied, and Plaintiffs filed a sur-reply.  D.E. 19, 24, 25-1.  For the reasons stated below, the motion is GRANTED IN PART and DENIED IN PART.

### STANDARD OF REVIEW

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

The court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).  The court may not weigh the evidence or evaluate the credibility of witnesses.  *Id*. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248.  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."  *Caboni*, 278 F.3d at 451.

**DISCUSSION**

**A. Evidentiary Objections**

The exhaustive evidentiary objections—and the prolific briefing of them—are addressed primarily to the form of the evidence.   There is no substantive dispute regarding (1) the existence and terms of the note and deed of trust, (2) Plaintiffs' default in payment, or (3) the documentation of the handling of the insurance proceeds.   In fact, Plaintiffs' claims and their response to the motion depend on this evidence.   It is in that context that the Court reviews Plaintiffs' evidentiary objections.

In support of its motion, Flagstar attached a business records affidavit and several documents from its record of Plaintiffs' account.   Plaintiffs have objected to these records, complaining that they are not properly authenticated by the affidavit of Kaitlin Paulk, Flagstar's Assistant Vice President/Sr. Manager and that they constitute and contain inadmissible hearsay.   They also object that Paulk's testimony is conclusory.   In response to discovery requests, however, Plaintiffs have admitted to the existence of the main transactional documents and their failure to make payments after September 2017. D.E. 18-3, p. 5, 8.   The Court OVERRULES the objections to the Flagstar account information and disregards any improper hearsay internal to the documents that is not cumulative.

Plaintiffs object to the National Weather Service Bulletin, which Flagstar offers only to substantiate the Hurricane Harvey incident—an event that is part of Plaintiffs' allegations.   This is a matter of which this Court, sitting in Corpus Christi, Texas, may take judicial notice.   The objection is OVERRULED.

Last, Plaintiffs object to the Aransas County Appraisal District summary regarding the value of the property sold at foreclosure.  While the Court can take judicial notice of governmental records obtained on official websites,[1] it is not clear that the summary printout was obtained from a governmental source.[2]  The only representation in that regard is the URL appearing on the printout.  Neither the URL itself nor visiting that web page resolves this question and Flagstar did not provide further explanation in response to Plaintiffs' objection.  Consequently, the objection is SUSTAINED.

## B.  Facts

It is undisputed that, on June 4, 2014, Plaintiffs executed a note and deed of trust to secure a purchase money loan for their property at 102 104 Dove Drive in Rockport, Texas.  D.E. 18-1, pp. 8-21.  On June 18, 2014, Flagstar became the loan servicer, responsible for taking payments and enforcing the note and deed of trust.  *Id*., p. 26.  In August 2017, Plaintiffs defaulted on their monthly payment and Flagstar sent them a past due notice.  *Id*., p. 31.   In that same month, Hurricane Harvey hit Rockport, Texas, and severely damaged Plaintiffs' home.

Because of the natural disaster, Flagstar approved a three-month forbearance plan during which Plaintiffs were not required to make payments and no late fees were charged.  *Id*., p. 33.  Pursuant to this agreement, no other terms of the loan changed and Flagstar still treated it as past due.  *Id*.  On November 17, 2017, as the three-month forbearance plan came to a close, Flagstar provided notice that the forbearance agreement

---

[1]   *Funk v. Stryker Corp*., 631 F.3d 777, 783 (5th Cir. 2011).

[2]    The Court is aware that a number of unofficial websites offer governmental information that may or may not be accurate, current information.

was ending and, in the absence of an agreement with Plaintiffs otherwise, instituted a repayment plan whereby the missed payments would be spread over six months to bring the note current. *Id*. at 36; D.E. 24-1, p. 17. Plaintiffs admit to having received a letter of this date but dispute its terms. D.E. 18-3, pp. 6-7. However, that issue is not material to a disposition of Flagstar's motion.

Plaintiffs admit that they are in default on their payment obligations on the note and have not made a payment since September 2017. D.E. 18-3, p. 5; D.E. 18-4, p. 10. On or about September 13, 2017, the parties began receiving proceeds of Plaintiffs' flood and windstorm insurance policies, with checks made out to Plaintiffs and Flagstar. D.E. 18-1, p. 63, 66. Plaintiffs endorsed the checks and Flagstar deposited them in a restricted escrow account associated with their loan.

On September 19, 2017, Flagstar sent Plaintiffs a letter referencing "Claims Handling Procedures." *Id*. pp. 78-79. The notice included the following representations:

- "***As long as your mortgage payments are current***, your claim will begin to be processed so that funds may [be] disbursed."
- "***The funds will be credited to your mortgage***."
- "Flagstar Bank will release funds based on the percentage of work that the inspection verifies is complete, if required."

*Id*. (emphasis added).

On or about October 26, 2017, Plaintiffs notified Flagstar of their intent to rebuild their home with insurance proceeds. D.E. 24-1, p. 3.[3] While Plaintiffs dispute having given Flagstar this notice, it is undisputed that Flagstar then began disbursing the

---

[3]   The Home Building Agreement between Plaintiffs and United Built Homes, LLC is dated September 27, 2018. D.E. 18-5, p. 2.

insurance proceeds to Plaintiffs and/or their builder.  D.E. 18-1, pp. 70-76.  On April 23,

2018, Flagstar sent Plaintiffs another letter on handling insurance claims, which included

the following representations:

- "Your claim funds will be returned to you providing your loan is current."

- "Flagstar Bank will release funds based on the percentage of work that the inspection verifies as complete, if required."

*Id*., pp. 81-82.

On April 25, 2018, Flagstar sent Plaintiffs a notice of default and intent to

accelerate, with an opportunity to cure by May 25, 2018.  D.E. 18-1, p. 41.  On June 10,

2019, Flagstar sent Plaintiffs a Notice of Sale and Acceleration by certified and regular

first class mail, notifying them of the foreclosure sale scheduled for July 2, 2019.  D.E.

18-1, p. 60, D.E. 24-2, pp. 3, 6, 14.  Plaintiffs complain of deficiencies in the notices, but

those issues are not material to the disposition of this motion.  The property was sold at

foreclosure on July 2, 2019.  D.E. 18-1, pp. 53-55.

### C. Plaintiffs' Argument

Plaintiffs observe that, at all material times after the three-month forbearance

agreement, Flagstar had possession of their insurance proceeds, which were more than

sufficient to bring the payments on their loan current, even while incrementally

disbursing insurance funds for the construction of their new home.  Flagstar does not

controvert this fact.  Even at the time of foreclosure, Flagstar had over $80,000 of

insurance funds in escrow (D.E. 18-1, p. 5) and the notice of default (*Id*., p. 41) showed

only $15,416.56 in past due payments as of April 25, 2018, prior to acceleration of the note.  Monthly payments were $1,138.73.  D.E. 18-1, p. 8.  This means that absent acceleration, on the July 2, 2019 date of foreclosure, the unpaid amount did not exceed $33,000 which was less than half of the remaining amount of insurance proceeds Flagstar had under its control.

Plaintiffs' argument is that Flagstar's letter representations regarding handling insurance funds essentially modified the loan agreement because the insurance claim procedure allowed release of the funds only if the loan was current.  D.E. 18-4, pp. 6-7.  In other words, they argue that Flagstar had a duty to credit the note with sufficient insurance funds to cure the default in payments.  Alternatively, Flagstar's release of funds was a factual representation that it had brought the note current, whether or not Flagstar had a duty to use the insurance funds as note payments.  Thus they argue that they were no longer in default under the note once Flagstar began disbursing insurance proceeds.

Flagstar does not address this argument and it can take little comfort in *Payne v. Wells Fargo Bank, N. A.*, 637 Fed. App'x 833, 836 (5th Cir. 2016) (per curiam).  *Payne* held that a similar set of terms in a note does not require the bank to cure the borrower's default with the borrower's insurance monies.  But that case did not address a series of claims handling letters representing that insurance funds would not be disbursed unless the loan was current.  Thus the *Payne* court did not decide the central question in this case.

Flagstar does not provide any legal or factual argument that nullifies the facial import of the insurance claims handling letters.  Therefore, because the summary

judgment burden of proof is on Flagstar, there is an unresolved dispute whether Flagstar had a duty to or represented (or misrepresented) that it did apply a portion of the insurance proceeds to the loan before disbursing insurance funds.  If that representation modified the terms of the note, then Plaintiffs have asserted a breach of contract action. Either Flagstar breached the agreement to apply insurance funds to bring the account current or it proceeded with foreclosure despite representing—with each disbursement of insurance funds—that the note was not in default.

This dispute regarding the effect of Flagstar's insurance claims handling letters precludes summary judgment on certain claim elements.  Therefore, the success of Flagstar's motion depends on whether Flagstar has demonstrated that Plaintiffs cannot prevail on some other element of each of their claims.

### D. Breach of Contract

"Under Texas law, '[t]he elements of a breach of contract claim are: (1) the existence of a valid contract between plaintiff and defendant; (2) the plaintiff's performance or tender of performance; (3) the defendant's breach of the contract; and (4) the plaintiff's damage as a result of the breach.'"  *Kellermann v. Avaya, Inc*., 530 Fed. App'x 384, 388 (5th Cir. 2013) (quoting *In re Staley*, 320 S.W.3d 490, 499 (Tex. App.—Dallas 2010, no pet.)).  The above discussion of the facts and Plaintiffs' argument, along with Flagstar's failure to expressly address the argument, prevents summary judgment on the first three elements.  Thus, Flagstar is entitled to summary judgment on the breach of contract claim only if there is no evidence of damages resulting from the alleged breach.

Flagstar's argument on damages is circular:  Plaintiffs have no damages attributable to Flagstar's breach of contract because Flagstar did not breach the contract. Flagstar does not address the fact that when construction of Plaintiffs' home was just over halfway complete, it foreclosed its lien, depriving Plaintiffs of their property under circumstances that also created a liability for a deficiency on the note.  Flagstar's evidence, if admitted, would show that the property was sold for only 64% of its tax appraisal value, which would certainly be some evidence of damages.  Flagstar has not adequately addressed Plaintiffs' damages and has not met its summary judgment burden on the breach of contract claim.

### E.  Wrongful Foreclosure

"Texas recognizes the following elements of a wrongful foreclosure claim: '(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price.'"  *Foster v. Deutsche Bank Nat'l Tr. Co*., 848 F.3d 403, 406 (5th Cir. 2017) (quoting *Sauceda v. GMAC Mortg. Corp*., 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi-Edinburg 2008, no pet.)).  While Plaintiffs have alleged defects in the notice of default and intent to accelerate and the notice of foreclosure sale, the Court need not reach those arguments. The Court does not comment on the presumption of receipt after mailing or whether Plaintiffs have adequately rebutted that presumption.  Neither does it address Flagstar's arguments that it met all appropriate deadlines.  It is sufficient that there is a disputed issue as to whether Flagstar could proceed with foreclosure if, as alleged, it had a duty to bring—or represented that it had in fact brought—the account current with insurance

proceeds.   Therefore, Flagstar is not entitled to summary judgment on wrongful foreclosure based on the first element.

The Fifth Circuit has observed that a grossly inadequate selling price, the second element, is defeated when the price is more than 60% of the fair market value.   *F.D.I.C. v. Blanton*, 918 F.2d 524, 531 (5th Cir. 1990) (listing reasons for establishing such a threshold).   Flagstar argues that the price obtained at the foreclosure sale was 64% of the tax appraisal value, which is therefore adequate as a matter of law.

Even assuming without deciding that tax appraisal value equates with the fair market value portion of the equation, the Court has sustained Plaintiffs' objection to the tax appraisal value evidence.   Therefore, Flagstar's motion is not supported by summary judgment evidence on this issue.   Moreover, Plaintiffs are competent to testify as to the value of their property.   *See Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984), *abrogated in part on other grounds by Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Tex.), L.P.*, 449 S.W.3d 474, 483 (Tex. 2014).   They have disputed Flagstar's valuation.

Regarding the third element of a causal connection between the defect and the grossly inadequate selling price, Flagstar only states that Plaintiffs cannot establish that element because they have not demonstrated the first two elements of a wrongful foreclosure claim.   D.E. 24, p. 16.   Flagstar has failed to defeat the third element. Therefore, Flagstar is not entitled to summary judgment on the wrongful foreclosure claim.

**F.  DTPA Violations**

Flagstar's challenge to the DTPA claims is based on Plaintiffs' failure to qualify as "consumers" under the act.  Courts have long held that the money sought in a loan is not a "good" or "service" supporting consumer status and therefore the DTPA does not apply to a bank's conduct in servicing a note and deed of trust or foreclosing a lien. *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174-76 (Tex. 1980); *Rojas v. Wells Fargo Bank N.A.*, 571 F. App'x 274, 279 (5th Cir. 2014) (citing *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 725 (5th Cir. 2013)); *Fowler v. U.S. Bank N.A.*, 2 F. Supp. 3d 965, 974–75 (S.D. Tex. 2014) (collecting cases).

Plaintiffs argue that because Flagstar was disbursing the insurance funds to construct their home, they fall under an exception to the rule, as stated in *Flenniken v. Longview Bank & Tr. Co.*, 661 S.W.2d 705, 707 (Tex. 1983).  In that case, the Flennikens entered into an agreement with Easterwood for the construction of a home.  Their mechanic's lien note was originally with Easterwood, which assigned the note to the bank.  The bank disbursed funds to Easterwood as the construction proceeded.  Before completing the construction, Easterwood abandoned the project.  The bank then foreclosed its lien on the property.

In finding consumer status for a DTPA claim, the Supreme Court of Texas wrote:

> The court of appeals erred in holding that the basis of the Flennikens' complaint was Easterwood's transaction with the Bank, rather than their transaction with Easterwood.  From the Flennikens' perspective, there was only one transaction: the purchase of a house.  The financing scheme Easterwood arranged with the Bank was merely his means of making a sale.  The Bank's unconscionable act in causing the sale of the

> Flennikens' property and the partially built house arose out of the Flennikens' transaction with Easterwood.  The Flennikens, therefore, were consumers as to all parties who sought to enjoy the benefits of that transaction, including the Bank. Clearly, the Bank had no greater right to foreclose on the Flennikens' property than did Easterwood.  If Easterwood had foreclosed his lien under these circumstances, and if a jury had found his actions to be unconscionable, there is no question that he would be subject to liability under the DTPA. The Bank—which wrongfully exercised a power it derived from Easterwood's transaction with the Flennikens—is subject to the same liability.

*Id*. (citation omitted).

This exception does not apply here because the original transaction was between Plaintiffs and the lender, not a builder or seller.  While the purpose for the funds was to purchase the original home, that purchase transaction is not the source of Plaintiffs' complaints.  *Walker v. F.D.I.C.*, 970 F.2d 114, 123 (5th Cir. 1992) (holding that consumer status does not arise out of a financing transaction where the item financed does not supply the basis for the claim).  While Flagstar was disbursing Plaintiffs' insurance proceeds for the construction of a new home, Flagstar was doing so only as servicer of the loan for the purchase of the original home.  Additionally, the claim does not arise out of any wrongdoing with respect to the replacement home construction. Consequently, Plaintiffs are not consumers and cannot recover under the DTPA.

## CONCLUSION

For the reasons set out above, Flagstar's motion for summary judgment is GRANTED IN PART with respect to the claim for violations of the DTPA and is

DENIED IN PART with respect to the claims for breach of contract and wrongful foreclosure.

      ORDERED this 31st day of August, 2020.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE